We welcome you all here this afternoon. I hope no one was seriously inconvenienced by our changing from Monday, Tuesday morning to Tuesday afternoon. It was much easier for some of us to travel. In any case, we will turn to the work at hand expeditiously. I would like you all to be cognizant of the time constraints. When the yellow light comes on on the podium, you have two minutes left. When the red light comes on, we ask you to conclude your argument as soon as possible, unless you're answering a question from the bench. Further, we are familiar with the briefs and record excerpts. We have not read the record normally, so we appreciate record citations when those are available or useful. First case of the afternoon is number 2430347, U.S. v. Murphy. We'll hear from Mr. Washington. Good afternoon. May it please the court, my name is James Roy Washington III, and I represent the appellant, Trayvon Murphy, in this matter involving his sentencing. Today I will be focusing on the erroneous application of the cross-reference applied to Mr. Murphy, and I will briefly hit on the misapplication of the drug quantities and the mitigating role that should have been applied to Mr. Murphy's situation. Ultimately, I will be focusing on the extreme injustice that took place during Mr. Murphy's sentencing. I believe that in order to get a full understanding of why this extreme injustice took place, we need to look at a timeline of the events leading up to Mr. Murphy's sentencing. On October 5, 2023, Mr. Murphy pled guilty to firearm, drug, and robbery conspiracies. He also pled guilty to committing the robbery in violation of the Federal Hobbs Act. During Mr. Murphy's plea negotiations, the government mentioned that they believed that Mr. Julius Alexander murdered a Mr. Jermaine Gooden. They believed that Mr. Murphy had information regarding that murder. They sought to include language relating to that murder in Mr. Murphy's factual basis. As it relates specifically to Mr. Murphy, the information they believed that he had was related to a text message from Mr. Alexander on the date of the murder in which Mr. Alexander asked Mr. Murphy if he had ammunition, and Mr. Murphy stated that he did not. They sent over numerous factual basis that wanted to at least mention the murder in Mr. Murphy's factual basis. Mr. Murphy declined all versions. In fact, Mr. Murphy, through undecided counsel, stated that the only way he would plead guilty or agree to any factual basis is if that text chain in which Mr. Alexander asked for ammunition, and Mr. Murphy said that he did not have any, was included in his factual basis. The government agreed, and the matter was set for rearrangement. Mr. Murphy pled guilty to the aforementioned charges. And how much of that is in the record? Your Honor, that is in the record in the sentencing memorandum for both the government and Mr. Murphy. The PSR? No, Your Honor, the sentencing memorandum. The sentencing issues were briefed multiple times prior to the evidentiary hearing and prior to the sentencing. What you're saying is the plea negotiation seriously included the factor of what would be included or not in the factual basis, right? Is that what you're saying? Yes, Your Honor, so it included what would be included, the negotiations encompassed what would be included in the factual basis. But what's important here, and the reason why the timeline is important, at no time during those negotiations were there ever an allegation that Mr. Murphy allowed Mr. Alexander to use the firearm that was related to Mr. Gooden. And that becomes an important factor, an important fact, when you're talking about the pros references in this matter. Because that's one of the factors that needs to be considered. That allegation was not included in any of the factual basis that was sent over from the government to Mr. Murphy. Nevertheless, exactly one week after Mr. Murphy pled guilty, the government charged Mr. Alexander with the murder of Mr. Gooden. In that factual basis that Mr. Alexander executed, it states that he used a weapon from Mr. Murphy to carry out the murder. This was the first time that allegation was ever made. This is a week after, well, I'll take that back. They charged him a week after Mr. Murphy pled guilty. Mr. Alexander did not plead guilty until November 1st. So almost a month after Mr. Murphy pled guilty was the first time that the allegation came out that Mr. Murphy transferred a weapon that would be used in the murder of Mr. Gooden. That was the first and only charge related to the murder of Mr. Gooden, was that of Mr. Alexander. Mr. Alexander pled guilty to that murder on November 1st on a factual basis, alleged these allegations. Approximately a month later, Mr. Alexander apparently sat down with Special Agent Jason Quick and provided more details for what allegedly happened on that day. In that proffer, according to Agent Quick, Mr. Alexander stated that Mr. Murphy was also the getaway driver in that murder. That allegation had not been previously made, not before Mr. Murphy pled guilty, and not before Mr. Alexander pled guilty. Nevertheless, probation used these allegations and they included in Mr. Murphy's pre-sentence investigation report. Well, they would be relevant conduct, wouldn't they? Well, it would be relevant conduct itself in this situation, Your Honor, because there's a limitation on relevant conduct where it applies to the cross-reference. All right, well, we'll get to that. Yes. Thank you. Yes, Your Honor. So they included it in the pre-sentence investigation report, and they basically held that if a firearm is arguably related to Mr. Murphy and it was used in the commission of a murder, then that forms the basis to be included in the cross-reference and relevant conduct, as Your Honor just questioned. There was an evidentiary hearing in which the court agreed or believed Mr. Alexander's statements and the facts that he presented to the court, and I outlined in my brief all the inconsistencies with his testimony and the ulterior motives that he had regarding that. Mr. Alexander, in an effort to avoid a life sentence for the murder which he admitted to for killing Mr. Gooden, he testified against Mr. Murphy and said that Mr. Murphy handed him the murder weapon on the date of the murder. Because of that, the district court applied the murder guidelines to Mr. Murphy. His guidelines, from my calculation, was 46 to 57 months, and I understand that the district court states that they believe that the guidelines would have been 87 to 108 months, but my calculation, 47 to 57 months, was basically quadrupled, and he was sentenced to 360 months because of the cross-references. Mr. Murphy believes that the government, even if they had allegations that he somehow transferred ammunition or the murder weapon to Mr. Alexander, they should have disclosed that prior to the guilty plea. They have never admitted or denied whether or not they had those allegations prior to the guilty plea. They are simply saying that they didn't need to disclose this information. They're saying because they never intended. During the sentencing, what was the government's explanation to the court and you for sort of springing this, for want of a better way to put it, on a matter that hadn't been negotiated according to you? So we're at sentencing, and so now this is a critical ingredient in determining the application of the cross-reference. So you objected, of course, right? Yes, Your Honor. It's preserved. So what's the on-the-record explanation, if you will, for what transpired? I mean, we read the briefs. I know what they said in the briefs, but what did they say to the— My understanding of their argument is kind of twofold. They're stating that because they mentioned the murder in the plea negotiations, that that should have put us on notice. I disagree with that because the terms are very specific in what needs to be mentioned. It needs to be a transfer of the ammunition or the firearm cited in the offense or the conviction. It can't just be that we believe that he knew about a murder and that he knew that Mr. Alexander committed a murder. So that's the first one. Their second argument is that they did not have to disclose this information because they did not plan on charging Mr. Murphy with the actual murder. So basically, it's irrelevant whether or not the allegations existed or not. They did not have to disclose that information. We absolutely disagree. Had the government believed that he provided that firearm, they should have said something. They should have said something before the plea happened. They could have charged Mr. Murphy with the murder just like they did Mr. Alexander. They failed to do so. You wouldn't have been happy about that. Your Honor, yes and no. Because had they charged Mr. Murphy with that, we could have fought those charges, and we could have gotten those charges dismissed, and then we'll be here maybe on a different issue as to whether or not you can consider that conduct, although it had been dismissed. But we would have had a jury determine that Mr. Murphy was not involved in that murder. He did not get that opportunity. He didn't even get an opportunity to fight that allegation in his factual basis because it never came up prior to his guilty plea. Well, he was cross-examined. Did you represent him at the hearing? I can't remember. Yes, I represented Mr. Murphy at the, yes. Right, at the sentencing. Yes, Your Honor. So I'm sure you cross-examined Alexander pretty thoroughly. Yes, Your Honor. And his story changed. His story changed multiple times in his outline in my brief and his outline in the evidentiary hearing transcript. It changed multiple times even while he was on the stand. Well, would you get to the point of the cross-reference and exactly how you build your argument that the cross-reference is improperly applied? Yes, Your Honor. Section 2K2.1C1 of the Sentencing Guidelines states that the cross-reference are only applicable if the defendant used or possessed a transferred-in firearm or ammunition cited in the offense of the conviction. That's the term that's here at play. That's the most important term today, Your Honor, is whether or not the firearm in this case was cited in the offense of the conviction. And the government and the district court, they rely on the United States Fourth Circuit case of United States v. Averant. There it states that it does not have to be listed specifically in the indictment in order for that provision to apply. I understand that argument, and I agree to a certain extent. But I want to point out some of the distinguishing features in the Averant case that's been cited, the Singleton case, and the Ezra case. In Averant, the argument was not that it wasn't listed anywhere in the indictment. In the Averant case, if you take a look at the indictment in that matter, under the notice of forfeiture, it specifically lists the firearm that was used not only in that case, but that they used to do a cross-reference in another case. And in the Averant case, the Fourth Circuit specifically stated that the defendant never denied that the firearm was the same. The Averant case goes on further, and they took a look at the reasons for the amendments when that language was included. When the Sentencing Commission included the language that it must be cited in the offense of the conviction, the commission stated, in order to limit the application of the cross-reference to instances where the defendant used the same firearm involved in the offense of the conviction in connection with another offense. It's not at play here. It's not at play for a number of reasons. Because if you look at Mr. Murphy's indictment, it specifically states that the firearm conspiracy, which probation and the district court connected to this murder, the firearm conspiracy was limited to crimes of violence specifically listed in the supersede indictment. The murder never appears there. Now, wait a minute. Wait a minute. So, count one is conspiracy to possess and brandish firearms in further incendiary crimes of violence. And what were the crimes of violence that you say were referenced in the indictment? The Hobbs Act robbery, Your Honor. That's it? That's it. Because if you look at that, if you carry that census out, it states, in relation to the crimes of violence and a drug trafficking crime, then it states, as alleged in the superseding indictment. As alleged in the superseding indictment. If you look at the Avron case, it talks about a murder that was mentioned in that case, and it lists the specific firearm under the notice of forfeiture. If you look at the Singleton case, which the district court cited, that involves a firearm conspiracy as well. But in that case, in that indictment, it specifically states that that firearm conspiracy involved a murder and an attempted murder. So you're not denying that your client furnished a firearm in the Hobbs Act robbery? I'm not denying that that was a firearm conspiracy. What I'm stating is that the firearm that's related to the commission of the murder is nowhere included anywhere in the indictment, and is not cited in the offense of conviction. But didn't you agree, and I'm not trying to trip you up, I'm just trying to explore this thing, but you just agreed that you don't have to cite in the brandishing account that it was this 223 caliber firearm, right? You do not have to cite it with that degree of specificity, correct? Your Honor, I'm stating that that's what the case law has stated. I'm not agreeing with that, but I'm stating that there's case law to support that position. Right. So I understand why the district court relied on that, but I don't agree with that position either. I don't believe that the notes and the reason for the amendment by the citizen's commission supports that argument. What you're saying is- Excuse me. I'm sorry. Go ahead. Your argument, in Singleton, which was an unfocused case, there in the PSR, it specifically listed attempted murder as part of PSR. So that would have given that defendant notice that attempted murder was at play to some degree. It was an indictment, Your Honor. What you're saying here, there is no such explicit or implicit mention. This comes up during a sentencing hearing. I mean, that's how you seem to distinguish the cases. Those cases say what they say, but if I understand your argument, they have an explicit mention of the murder. So they at least were there for purposes of the discussion. Whereas here, it doesn't show up until it appears in the cross reference. Yes, Your Honor. So not in the PSR, in the charged indictments. In Averant and Edger and Singleton, in the charged indictment, it specifically lists a murder. Or it specifically lists an allegation that there was a transfer of a firearm, or including a firearm conspiracy, was a commission of another offense. None of that took place here. Mr. Murphy did not find out about that allegation until after he pled guilty. So how could it be cited in his conviction of the offense? Your Honor, I'm going to reserve the rest of my time for my rebuttal. Okay. Thank you, sir. Ms. Roberts. Your trial counsel? No. You and Mr. Bartman show up to clear the smoking fog. I've said that to him before. I got you. It's not a discounting factor. It just helps when we have the people who are on the ground. Thank you. May it please the Court, I'm Megan Roberts on behalf of the government. Unless the Court prefers I begin with one of the other issues, I will start with the District Court's application of the cross-reference. The sentencing guidelines allowed the District Court to consider all of Trayvon Murphy's conduct. This included any uncharged conduct, as here the relevant conduct, when fashioning its fair and proportionate punishment. Nothing in the language of Enhancement 2K2.1 requires the make, model, or serial number of a firearm to be set forth in the charging document, as counsel is encouraging. Counsel's argument to the contrary actually narrows the language and application of the cross-reference. He seems to want any reference to the other offense or that firearm to be placed in the indictment or the factual basis. But relevant conduct, when looking at the overall sentencing goals of the sentencing guidelines, relevant conduct is part of basically all of the guidelines. It's to allow District Courts in this case to consider a defendant's actions beyond the specific charges for which they were convicted. It provides a more complete picture for a just and proportionate sentence. We're familiar with relevant conduct, and that is a broad basis on which the District Court does have to sentence. But counsel said that's a different deal when, yes, you say the ammunition may have been given to this other guy for purposes of the other charged crime. But then when he gets a sentence and say, and by the way, the ammo was used to commit a murder, so we're including it here. That seems, at least the argument, a bit of a stretch to just say relevant conduct covers all of that. And I read what the court said, but that seems at least arguably taking relevant conduct out to its outer contours. Well, looking at the charge here, it was a 924-0 firearm conspiracy charge in furtherance of drug trafficking and crimes of violence. The Hobbs Act robbery that occurred was the same victim. That was the murder victim. That was Jermaine Gooden. So they went and they tried to rob him, and then a month later, in furtherance of their drug activity, they then shot Jermaine Gooden. So if you're looking at the conspiracy, the conspiracy took place over a two-year period. It involved ten conspirators. Something to think about as well in that conspiracy is firearms usually, especially in a conspiracy that large, aren't usually recovered by law enforcement. Well, let me just say, you know, ordinarily I'm very sympathetic, but we have comment 14 to whichever sentencing guidelines to application of subsections B6B and C1. And it says, however, subsection C1 contains the additional requirement that the firearm or ammunition be cited in the offense of conviction, which seems to me to at least require a connection between the firearm and the offense of conviction. Some kind of connection, and then some kind of citation where there doesn't appear to be one here. I would agree with you that there does need to be a connection between the offense of conviction and that other offense. And in 2K2.1 commentary, when they're talking about the relationship between the incident offense, which we have here, the 924-0, and the other offense, which is Jermaine Gooden's murder, the commentary in the guidelines specifically say, in determining whether subsection C1 applies, also if you're going to apply B6B, the district court must consider the relationship between the incident offense and the other offense consistent with relevant conduct principles. So what you have here is that you do have a connection between the firearm conspiracy with the other offense. And to make that connection, there wasn't a factual basis, as you might have had in another case. But what we had instead was a two-day evidentiary hearing where a district court could make factual determinations and, in fact, did make 20 factual findings. So just as you would with relevant conduct to decide whether or not this other offense somehow related back to the conspiracy, in this case it did. It was the same accomplices and the same victim. Well, suppose you had a conspiracy that had gone on for, you know, a year or more. I think, in fact, this indictment was more than a year, wasn't it? Yeah. So suppose they had committed three or four murders during this period. You're saying they could have brought up any other murders as long as they had some kind of relationship to the conspiracy? Well, in this case, it was more than a tangential relationship. Here, the co-conspirator was rigorously cross-examined and, you know, got on the stand and not only said that he was the person who shot Jermaine Gooden and, you know, maintained that, but said that two others that were part of this conspiracy, Jamal Clay and Trayvon Murphy, were there on the day of the murder, had helped him plan the murder, and it just so happened on the day of the murder, he didn't have his gun with him, and so he needed to borrow Trayvon Murphy's gun. So all of that was already proved at the evidentiary hearing. So this wasn't a case where we were trying to link a bunch of different things under— But under your theory, you could. No, because I think that you still have the limits of relevant conduct. You still have a requirement that the government prove up a sentencing enhancement. Well, what does that do with the balance of incentives for the government in charging? Because, you know, the example of C-1 is where the government charges a shotgun in one offense but a handgun was used in another, and they said you can't cross-reference in that circumstance. So it seems to me that what you're arguing gives the government a great incentive never to plead specifically, to plead stuff like conspiracy to possess and brandish firearms in further instance of crimes of violence, and therefore the more global you are in your allegations, the more underlying stuff you can bring up at sentencing to adjust the sentence, right? Well, I mean, I think—I realize that counsel brought up the timeline, and I do want to talk about that a little bit. Trayvon Murphy was the first one to plead guilty, and he did so in October of 2023. The government made him aware that they were investigating the murder of Jermaine Gooden. He was well aware of that. At sentencing, you know, counsel even commented they made sure to take anything related to the murder out of the factual basis and conceded there had been extensive plea negotiations. So he was not blindsided. He knew the government was investigating that murder. After he pled guilty, a month later is when Julius Alexander, his co-conspirator, pled guilty and provided a 15-page factual basis. And in that factual basis, he provided more allegations connecting Trayvon Murphy and others to that murder, and then he proffered with the government a few months later. So looking at the timeline here, you're not going to have that necessarily in every case. But in this case, he wasn't blindsided. Once he pled guilty to that, we held to that plea agreement, and then more information came in, and that's not uncommon. Relevant conduct that comes into the pre-sentence report all the time that we may not be aware of at the time that a defendant pleads guilty. Probation, they do their own investigation, and that's the purpose of the pre-sentence report is that a district court can have the entire sort of picture of the defendant's conduct. And that's exactly what happened here. What's the strongest case or cases you're relying on? Is it Aberrant and Singleton? The case that I think is actually the most instructive for this court in sort of figuring out how to kind of parse through this is actually the Eighth Circuit case, United States v. Edgar. And the reason why I think that's the most instructive is because Edgar pleaded guilty to 922G1 and 924O, very similar here. He was sentenced to 360 months, and the facts here are very similar to what happened. Edgar loaned his 9mm firearm to an acquaintance with the understanding that he believed that gun would be used in furtherance of drug trafficking, which included retaliation against a woman who the acquaintance then killed. And they put forth the same argument that we have here. The Eighth Circuit in that case said that it was clear from the record as a whole, and specifically said that citing the offense of conviction does not mean that it has to be in an indictment or a factual basis, but that a court may look at the entire record to determine whether the firearm that was cited was actually used in the other offense. I know that counsel has sort of talked a little bit about that in the indictment in that case, and the language that he talks about in that indictment is actually from Count 4, which Edgar did not plead to. Edgar pleaded to Count 2, and the language in the indictment in Count 2 is almost identical to the language that was in this indictment. I believe the language in Edgar said, one or other firearms, and the language that was in our indictment said firearms. So I think that case is the most instructive. And then as far as just kind of how this circuit has – oh, yes, Judge. In Edgar, was the specific gun mentioned at all in the indictment? It was not. In this case, was the rifle that was used ever mentioned in the indictment? It was not. But there was a list of a number of other firearms in the forfeiture count, is that correct? There were other ones. I believe there were other – I'll have to double check on that. I know in the factual basis for Trayvon Murphy, they listed some relevant conduct having to do with more firearms that he had outside of the conspiracy, and those were listed. But it was never listed – there were firearms listed in the indictment, but this specific .223 rifle was not? Correct.  So just sort of as far as – so United States v. Edgar, I would say, is a very instructive case. And then also, a recent case from this circuit was United States v. White that came out in December of 2024. It also looked at the sentencing enhancement. It didn't address this issue specifically, but there's some good language in there that I think is instructive. One is that cross-references are not merely determined solely by conduct charges in the count of conviction and that the applicability of 2K21 depends on relevant conduct. And in White, this court suggests that the district court can rely on additional facts about the incident to apply the cross-reference. And I think that's what the court did here. Normally, relevant conduct is used to adjust within a base offense level, right? In other words, if the – right? I think relevant conduct is used in a lot of different ways in the sentencing guidelines. It's used for sentencing enhancements, specific characteristics. It's used in criminal history points. Right. So it kind of is part of most of how the guidelines are calculated. Okay. I guess – any questions? There are no further questions. Thank you. I do have a question about the relevant conduct related to the drugs. Sure. What basis in the record is there for extrapolating other than three times the 28 grams of heroin? Yeah, so there's – he admitted in the factual basis that he and his associates sold cocaine and heroin regularly. So already he's making admission that he's regularly selling. There were text messages between Julius Alexander and Murphy that involved a 3.5-gram sales. In addition, there were text messages where he was talking about – he was getting complaints from his regular buyers about the quality of the drugs that he was selling. At the evidentiary hearing, Julius Alexander, on record 320, was talking about this drug trafficking operation in Plaquemines Parish prison and said that he had actually – Trayvon Murphy sells heroin, and he knows a lot of people because of that and was very instrumental in this drug trafficking in Plaquemines Parish. Are there any facts that allow us to define what regularly means? In other words, is he making X number of sales per week, per month? How are we extrapolating the amounts that we know about to the amounts in the PSR? Well, I think you can look at a two-year conspiracy of the drug – of the conspiracy. You can look at that there was a drug ledger. You can look at that he was regularly selling 3.5 grams, and he said regularly, and his co-conspirator testified that he was doing it regularly. So we don't – there's nothing in the record that says weekly or monthly, but I think that there is enough there to support that he did receive 28 grams as part of his participation in the good and murder, and I think under over a two-year period, you could extrapolate that he was regularly probably selling 3.5 grams weekly or monthly. And, you know, to the point that actually 100 grams may have actually been a very conservative estimate given the length of conspiracy and his involvement. Okay. Is the amount attributed to him based solely on his conduct, or was it based on the conspiracy since he was convicted of a conspiracy? In the PSR, they put it out by each person, and it was specifically based on the evidence that they had to support what they believed that he had. And also because all of these counts were grouped and there was already a base level of 43, this drug quantity didn't particularly affect these calculations. So if we were to vacate and remand, they could come back with ten times as much for the drug quantity? I mean, I think there would have to be a basis in the record, but I think that, yeah. All right. Thank you. If there's no further questions, the government rests on its brief. Thank you so much. Thank you. Mr. Washington. Yes, Your Honor. First, I would like to point out the government relied on United States v. Hawaii for the relevant conduct, but the Fifth Circuit in that case specifically stated that as it relates to the cross-reference, there's a limitation of relevant conduct. It has to be cited in their offense of the conviction. That's not the case here. There's a specific limitation on relevant conduct as it relates to the cross-reference guidelines for murder. I also want to address the question regarding the firearms listed in the indictment. Yes, there were. There were eight classes of firearms and ammunition listed in the indictment, none of which related to the Gooden murder. The government at the time of the indictment knew that Mr. Gooden was murdered with a .223 firearm. They did not list that in the notice of forfeiture. They didn't list it anywhere. In count three of the indictment, it lists all of the firearms that's involved in this matter. That's really not relevant, though, is it? Your Honor, I believe it is because it helps put you on notice of what that firearm conspiracy consists of. If they thought that the .223 was involved in the firearm conspiracy, they would have listed it there. And they're arguing that at the time, they didn't have in possession the firearm, so they could not have listed it. That argument is a farce. Because they issue, I mean, they list classes of ammunition. They list the .40 caliber ammunition, the 9mm ammunition. They list a Mossberg .22 rifle that didn't have a serial number. If they thought that the Gooden murder or the Gooden weapon was involved in this matter, they would have simply listed a .223 rifle because they knew exactly what Mr. Gooden was involved in. That's a different count, is it not? That's not what they're arguing, Your Honor. They're arguing that that murder was involved in the firearm conspiracy. And I know because that's what the count says, using or brandishing a firearm in connection with a crime of violence or drugs. Yes, Your Honor. I mean, that's why I said they can indict as globally as they want to, and then they use the firearm later on. Yes, and that's the issue here, because there's . . .  I believe the commission set forth their reasons, because they're saying . . . And then the Everett Court pointed out on the side of the commission, they say that the instant offense and the other offense must be related to each other by, at a minimum, having an identifying firearm in common. It doesn't exist here. There's no identifying firearm in common. But that's a district court case, and the Eighth Circuit is pretty much not aligned with your view. I disagree, Your Honor, because, first of all, the Everett case is a Fourth Circuit case, and the Eighth Circuit . . . Pardon me. No, no problem, Your Honor. The Eighth Circuit is not . . . the Eighth Circuit's case in Edger is not how the government has presented it to you guys today. In Edger, column four of the indictment states that it was related to a murder. He did not plead guilty to that, but in the indictment, they state that the murder was part of the conspiracy. He only plead guilty to the firearm conspiracy. He did not plead guilty to the murder, but they used a cross-reference. He was placed on notice in that indictment that . . . And it simply states that he transferred a firearm for the commission of a murder. I don't see . . . I mean, I understand your argument, but I do not see the point of this cross-reference to involve the kind of notice that you're making, sort of the linchpin of your argument. In other words, what the . . . I think it's . . . what the guideline is trying to get at is when you are involved with this firearm brandishing and use of firearms in connection with crimes of violence and drug trafficking, that includes a whole bunch of arguably very bad conduct. Your Honor . . . And so, the sentence ought to reflect the extremity of the conduct. I would disagree to the point that the commission made it clear in their comments and their reasons for that amendment. And first of all, in Edger, the court made it clear that Mr. Edger understood and knew that the 9mm weapon that was used in the offense of the murder was the same weapon that formed the basis for the firearm conspiracy. We don't have that in this case. We don't have a weapon that formed the basis for the firearm conspiracy that was used in the murder. And secondly, I go back to the comments that . . . the reason for the amendment. It says that the offense . . . and it must be related at a minimum to having an identifiable firearm in common. It says it must be the same firearm involved in the offense of conviction in connection with another offense. Everyone so far said it only applies if the defendant used that same firearm in the conviction of another offense. None of that is applicable here, Your Honor. For those reasons, we ask that the cross-references be overturned. Okay. Thank you, sir. Thank you, Your Honor. So, you're court-appointed? Yes, Your Honor. You've done a very fine job for your client, and the court appreciates it. Thank you, Your Honor.